UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RUCHENE S. LAKE,<br><br>               Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN. Commissioner of Social Security, [1]<br><br>               Defendant. | Case No. 3:13-cv-05083-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 7, 2014 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On May 6, 2009, plaintiff filed an application for disability insurance benefits, alleging disability as of December 22, 2004, due to diabetes, degenerative arthritis in both knees and in

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**

REPORT AND RECOMMENDATION - 1

her lower back, double reconstructive surgery on her left foot, sleep apnea, a hiatal hernia, twinges in her right hip, and high cholesterol. See ECF #11, Administrative Record ("AR") 39, 256. That application was denied upon initial administrative review on September 18, 2009, and on reconsideration on November 16, 2009. See AR 39. A hearing was held before an administrative law judge ("ALJ") on April 20, 2011, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's husband. See AR 90-148. A supplemental hearing was held before the same ALJ on August 19, 2011, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's husband and a vocational expert. See AR 61-89.

In a decision dated October 4, 2011, the ALJ determined plaintiff to be not disabled. See AR 39-53. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 22, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981. On February 11, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on April 30, 2013. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to properly consider the medical opinion evidence in the record from Kurt Kenyoer, PA-C, Daniel Neims, Psy.D., and Terrence Hess, DPM; (2) in failing to properly consider plaintiff's testimony and the testimony of her husband; and (3) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ failed to properly consider the

medial opinion evidence from Dr. Neims and Dr. Hess, and therefore in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy and thus in determining her to be not disabled. Also for the reasons set forth below, while the undersigned recommends defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

REPORT AND RECOMMENDATION - 3

sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.      The ALJ's Evaluation of the Opinions of Dr. Neims and Dr. Hess

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Neims

Plaintiff argues the ALJ failed to give proper consideration to the opinions of Dr. Neims. With respect to those opinions, the ALJ found:

REPORT AND RECOMMENDATION - 5

I give some weight to the opinions of Dr. Neims.  In March 2010, Dr. Neims opined that the claimant was impaired from sustained gainful employment for the foreseeable 12 months or longer (Exhibit 15F; See also Exhibit 23F Medical Source Statement prepared in conjunction with exhibit 15F noting moderate to marked limitations in sustained concentration and persistence and social interaction).[3]  On mental status examination, the claimant was able to spell the word "world" forwards and backwards, she recalled 3/3 items immediately and 2/3 after 5 and 30 minute delay.  She identified the president, vice president, governor and performed serial 3's without error, she had one error on serial 7's.  She completed a digit span subtest in a "relatively consistent manner."  She demonstrated grossly normal insight and judgment responding to questions regarding what she would do if lost in the woods, if she saw smoke in a theatre or found a stamped envelope on the ground.

Dr. Neims commented that the claimant is "likely to be a somewhat unassuming individual who prefers to avoid the leadership role in social interactions and relationships.  While she is not shy or socially avoidant, she is likely to be most comfortable in the background of a social setting."  Yet Dr. Neims concludes the claimant's ongoing difficulties with employment center on inflexibility in social interactions.  I note that Dr. Neims fails to provide any specific functional limitations other than alluding to problems with social interactions.  He also assigned a [global assessment of functioning ("GAF")] score of 52 which represents moderate symptoms.  In addition, it appears that Dr. Neims statement of inability to appears work [sic] rests on the claimant's physical and pain complaints and implicitly suggests individual therapy to explore the somatization disorder.  Dr. Neims statement that the claimant "is seen as impaired from substantial gainful employment" is not supported by his objective findings or the longitudinal record as a whole.  He provides no rationale for this conclusion.  The above residual functional capacity take [sic] into account any deficits in social functioning" by limiting the claimant to

---

[3] In a footnote, the ALJ stated:

> Similar to Section I of the Mental Residual Functional Capacity (MRFC) Assessment form used by the State Agency (see exhibit 18F), Dr. Neims completed exhibit 23F: a check-the-box form designed to record the reviewer's analysis of the evidence and his//her conclusions about: the presence and degree of specific functional limitations, and the adequacy of documentation.  Social Security [Program Operations Manual System ("POMS")] DI 24510.060 states that "Section I of the MRFC is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the [residual functional capacity ("RFC")] assessment." (at subs. B.2.a).  On the form used by the State Agency, Section III of the form is where the actual mental RFC is recorded.  On exhibit 23F, the form states a detailed explanation is to be recorded in section II of the form; this section is blank.  Nevertheless, I consider exhibit 15F the detailed explanation, and the location for any opinions regarding residual functional capacity.  Consistent with POMS DI 24510.060 I do not consider section I of exhibit 23F to constitute the claimant's residual functional capacity.

AR 49 n.3.

REPORT AND RECOMMENDATION - 6

work in which there is only incidental public contact, and where it is
recognized that she have few interactions with co-workers and supervisors.

AR 49-50 (internal footnote omitted).  The undersigned agrees the ALJ did not properly consider the opinions of Dr. Neims.

First, although the ALJ states that Dr. Neims "fails to provide any specific functional limitations other than alluding to problems with social interactions" (AR 50),[4] this is true only if the specific functional limitations checked-off in section I of exhibit 23 are ignored as the ALJ did here (see AR 50, 707-09).  The ALJ correctly notes that POMS DI 24510.060.B.2.a provides in regard to the Commissioner's MRFC assessment form that "**Section I [thereof] is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." https://secure.ssa.gov/poms.nsf/lnx/0424510060 (emphasis in original); see also, e.g., AR 640-42, exhibit 18.  But it is not at all clear that this POMS directive is intended to apply beyond use of the MRFC assessment form by medical consultants on behalf of the Commissioner. See POMS DI 24510.060, https://secure.ssa.gov/poms.nsf/lnx/0424510060.

Indeed, while the language and areas of mental functioning used in the form Dr. Neims completed mirrors those of section I of the MRFC assessment form, Dr. Neims did not actually completed that specific assessment form.  Nor is there any indication Dr. Neims intended to use the form he completed in the same manner as the MRFC assessment form, as opposed to merely it being a convenient way of indicating the nature and severity of the functional limitations he found plaintiff to have.  Accordingly, the undersigned finds the ALJ improperly determined

---

[4] The undersigned finds no fault in the ALJ's discounting of Dr. Neims's statement that plaintiff's "ongoing difficulties with employment center on inflexibility in social interactions," given the earlier comment by Dr. Neims that "she is probably reasonably effective in [such] interactions." AR 623-24; see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding claimant's capabilities "is a clear and convincing reason for not relying" on that assessment); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 7

those limitations did not constitute Dr. Neims's RFC assessment.  Further, although it is true Dr. Neims did assign plaintiff a GAF score of 52, which indicates only moderate mental functional limitations, it is not at all clear that that score should be given more weight than the specific mental functional limitations Dr. Neims also assessed.  See Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (noting that while GAF score may be "of considerable help" to ALJ in assessing RFC, "it is not essential" to accuracy thereof).

      In rejecting Dr. Neims's opinion that plaintiff was unable to work on the basis that that opinion appeared to rest on plaintiff's physical and pain complaints, the ALJ himself appears to misinterpret Dr. Neims's findings.  Dr. Neims diagnosed plaintiff with a somatization disorder, which he stated "is predicated upon medical findings which do not sufficiently explain the level and scope of impairment." AR 624.  Dr. Neims went on to state that it was "possible that the underlying causes for her pain complaints have not yet been discovered," but "[b]arring this discovery issues of pain complaints above those predicted by physicians are seen as more likely than not a manifestation of psychological processes." Id.  Thus, to the extent the ALJ rejected Dr. Neims's opinion because it was based on physical as opposed to psychological complaints that are outside the scope of his evaluation, the ALJ erred.  Nor is the fact that Dr. Neims "implicitly suggests individual therapy to explore the somatization disorder" (AR 50), necessarily call into question Dr. Neims's opinion concerning the impact of that disorder.

      The undersigned also finds erroneous the ALJ's statement that Dr. Neims's opinion that plaintiff was "impaired from substantial gainful employment' is not supported by his objective findings or the longitudinal record as a whole," and that Dr. Neims provided "no rationale for this conclusion." Id.  As to the supposed lack of any rationale, Dr. Neims stated that if a somatization disorder "is born out in the course of individual therapy than the role of these issues

REPORT AND RECOMMENDATION - 8

of responsibility and perception of physical incapacity preventing her ability to perform these roles should be carefully explored" (AR 624), thereby indicating his disability opinion was based on the somatization diagnosis. Further, Dr. Neims observed:

> Ms. Lake demonstrates an unusual degree of concern about physical functioning and health matters and probable impairment arising from somatic symptoms. She is likely to report that her daily functioning has been compromised by numerous and varied physical problems. She feels that her health is not as good as that of her age peers and likely believes that her health problems are complex and difficult to treat successfully. She reports particular problems with the frequent occurrence of various physical symptoms and has complaints of ill health and fatigue. She is likely to be continuously concerned with her health status and physical problems. Her social interactions and conversations tend to focus on her health problems, and her self-image may be largely influenced by a belief that she is handicapped by her poor health.

AR 623. Thus, Dr. Neims's report contains at least some objective support for his conclusions. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.").

### B.   Dr. Hess

The record contains a mid-August 2009 treatment note from Dr. Hess, in which he stated that plaintiff "clearly has a difficult time walking" and that "[h]er motion is considerably reduced on her symptomatic [left] foot and ankle," and opined that "[s]urgery did not provide her with adequate improvement so at this point disability would be a reasonable choice." AR 452. As plaintiff points out, while the ALJ mentioned in his decision that Dr. Hess had "diagnosed status post arthrodesis talonavicular joint, traumatic arthritis of the left foot, posterior tibial tendon

REPORT AND RECOMMENDATION - 9

dysfunction, and overpronation under-improved" (AR 42, citing AR 452), he did not address Dr. Hess's disability opinion.

Defendant concedes the ALJ erred in not addressing that opinion, but argues the ALJ's error should be considered harmless[5] because medical source opinions on the ultimate issue of disability are not necessarily conclusive or entitled to special significance. See ECF #18, pp. 12-13 (citing Morgan, 169 F.3d at 600; 20 C.F.R. § 404.1527(d)(1)-(3); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, *2). The problem for defendant, however, is that although the ALJ may not be required to give deference to Dr. Hess's disability opinion, he still had to give his own interpretation thereof and state why he was rejecting it. See Reddick, 157 F.3d at 725; Vincent, 739 F.3d at 1394-95. Further, while Dr. Hess did not expressly link that opinion to his statement regarding her reduced motion and difficulty walking, that link clearly could have been inferred. See AR 452. The ALJ's error therefore cannot be said to be harmless.

II.     The ALJ's Step Five Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

---

[5] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

REPORT AND RECOMMENDATION - 10

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform sedentary work . . . [She] can lift up to 10 pounds at a time and occasionally lift or carry articles like files, ledges and small tools; she can stand and or walk about 2 hours in an 8-hour workday and a[]medically required hand-held assistive device may be used if necessary for ambulation; she has no restrictions to sitting with normal breaks; she is limited to occasional overhead reaching; she is limited [to] occasional pushing and pulling up to lifting and carrying weight; she is limited to occasional climbing of ramps and stairs; she is limited to occasional balancing, stooping, kneeling, crouching; she is limited [to] no climbing of ladders, ropes, scaffolds; and she must avoid concentrated exposure to extreme cold and heat, vibration, industrial fumes, odors, gases, and hazards such as unenclosed or unprotected heights; she can perform simple, routine tasks and follow short, simple instructions; she can do work that needs little or no judgment and perform simple duties that can be learned on the job in a short period; she would have average ability to perform sustained work activities (i.e., can maintain attention and concentration[,] persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence; she can deal with occasional work setting change; she can occasionally interact with coworkers and supervisors; she can work in close proximity to coworkers but not in a cooperative effort not dealing with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process, incidental contact with the general public is not precluded.**

AR 45-46 (emphasis in original).

REPORT AND RECOMMENDATION - 11

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the supplemental hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 74-75. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 74-79. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 51-52.

Plaintiff argues the hypothetical question the ALJ posed to the vocational expert is not supported by substantial evidence, because it failed to include all of the mental and physical

REPORT AND RECOMMENDATION - 12

functional limitations found by Dr. Neims and Dr. Hess.  The undersigned agrees that because the ALJ erred as discussed above in evaluating the medical evidence from those two opinion sources, it cannot be said that the RFC with which the ALJ assessed plaintiff is wholly accurate and therefore supported by substantial evidence.  In addition, because the ALJ's hypothetical question relied on that RFC assessment, that question too cannot be said to be wholly accurate and supported by substantial evidence.  On the other hand, it has not yet been shown that the ALJ necessarily would be required to fully adopt the opinion evidence from Drs. Neims and Hess, or that the record supports a finding that plaintiff is incapable of sustaining sedentary work activity on a consistent and reliable basis as plaintiff further argues.

III.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the

REPORT AND RECOMMENDATION - 13

record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record from Dr. Neims and Dr. Hess, and therefore in regard to plaintiff's residual functional capacity and her ability to perform other work existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 7, 2014**, as noted in the caption.

DATED this 19th day of February, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14